## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jacqueline Colson, Carrie Borgheiinck, and Shelly Bratz, | Court File No. 22-cv-2041 |
| *Plaintiffs*, | |
| *vs* | **COMPLAINT** |
| Hennepin County,  Minnesota Department of Human Services, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

Plaintiffs Jacqueline Colson ("Plaintiff Colson"), Carrie Borgheiinck ("Plaintiff Borgheiinck"), and Shelly Bratz ("Plaintiff Bratz") make the following allegations for their Complaint against Defendant Hennepin County and Defendant Minnesota Department of Human Services ("MNDHS").

### INTRODUCTION

1.     In October, 2021, the Defendants Hennepin County and then MNDHS mandated that all of their employees receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Some of the Defendants' employees, including Plaintiffs, objected to receiving the vaccination because of their sincerely-held religious beliefs.  Plaintiffs filed requests for religious exemptions with Defendants.

2.     Although Defendants Hennepin County and MNDHS approved Plaintiffs' religious exemptions from taking the Covid-19 vaccination, Defendants required Plaintiffs to undergo regular mandatory Covid-19 testing, while vaccinated employees

were not required to undergo the mandatory Covid-19 testing.  Defendants have discriminated against Plaintiffs in employment based solely on Plaintiffs' refusal to take the Covid-19 vaccine, or submit to the discriminatory regular mandatory testing.

3.      Based on Defendants' Vaccine Mandates and requirement of Covid-19 testing, and Defendants' refusal to grant Plaintiffs their requests for a religious exemption to testing, Plaintiffs bring claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA"), and related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination.

## JURISDICTION AND VENUE

4.      Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

5.      This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6.      This Court has personal jurisdiction over Defendant Hennepin County because it is a subdivision of Minnesota government.

7.      This Court has personal jurisdiction over Defendant MNDHS because it is an agency of the Executive Branch of the State of Minnesota.

2

8.      Defendant Hennepin County is subject to the provisions of Title VII and the ADA because Defendant Hennepin County employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

9.      Defendant MNDHS is subject to the provisions of Title VII and the ADA because it employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

10.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and each Defendant conducts business in the State of Minnesota.

**PARTIES**

11.     Plaintiff Colson is a Hennepin County, Minnesota resident who has worked for Defendant Hennepin County as a public health nurse. Plaintiff Colson worked for the Defendant Hennepin County for over 5 years.

12.     Plaintiff Borgheiinck is a Scott County, Minnesota resident who has worked as a senior commercial appraiser for Hennepin County.  Plaintiff Borgheiinck worked for Defendant Hennepin County for over seven years.

13.     Plaintiff Bratz is a Meeker County, Minnesota resident who has worked as a licensed practical nurse for CBHH-Annandale, which is organized under the MNDHS. Plaintiff Bratz worked for Defendant MNDHS for over seven years.

14.     Defendant Hennepin County is a subdivision of Minnesota government.

3

15.     MNDHS is an agency of the Executive Branch of the State of Minnesota.

## FACTS

16.     During the Covid-19 pandemic in 2020 and 2021, Plaintiffs, while unvaccinated, continued to work during the pandemic while employed by Defendants Hennepin County and MNDHS.

17.     Defendants recognized the important work that all of their employees were doing—the unvaccinated and the vaccinated.

18.     However, despite that the status quo was working, Defendants implemented Vaccine Mandates in August 2021 and October 2021 for Hennepin County employees and MNDHS employees.  The Vaccine Mandates stated that "[A]ll county staff members are required to be fully vaccinated against Covid-19 or be subject to regular mandatory Covid-19 testing, to decrease the risk and transmission of Covid-19 in the workplace and in the community." The "regular mandatory Covid-19 testing" meant "weekly" testing.

19.     The Vaccine Mandate also stated that employees "must comply with any additional infection prevention measures the county deems necessary."

20.     The Vaccine Mandate provided that "[S]taff members failing to comply with the requirements in this Policy may be subject to discipline, up to and including termination."

21.     Failure by an unvaccinated staff member "to produce testing documentation in compliance with this Policy," could also subject that staff member to "discipline, up to and including termination," or failure to "submit proof of full vaccination" and refusal to test would "subject [the employee] to discipline up to and including discharge."

22. On December 6, 2021, Defendant Hennepin County implemented a Covid Immunization and Testing Policy requiring employees to "provide proof of immunization, or consent to weekly testing."

23. Plaintiff Colson requested a religious exemption from Defendant to the vaccine mandate and testing requirement. Defendant granted Plaintiff's religious exemption to the vaccine mandate, but conditioned it upon regular, mandatory, periodic, weekly testing.

24. Plaintiff Colson also sought an accommodation from the mandatory weekly testing, and Defendant denied that request and required Plaintiff Colson to test weekly.

25. Plaintiff Colson is a Christian who believes that she must treat her body as Temple of the Holy Spirit. She believes each person has the God given right to choose what he or she will put into their body, or take out of her body, based on free will. She also believes in the sanctity of human life, and since the available vaccines were produced with, or tested with cells from aborted babies, to take the vaccine would be inconsistent with her beliefs. Plaintiff Colson also believes that involuntary weekly testing also violates her religious beliefs, because it involves an involuntary intrusion into her body and extractions from her body, a Temple of God.

26. The weekly testing for only unvaccinated employees is time consuming, and done outside of work hours. The testing process is not private and the tester's family members are frequently seen and heard on the testing calls. Additionally, others observe the saliva test Colson has to undergo.

5

27.     Plaintiff was willing to comply with workplace protections that had been successful for the prior 1.5 years.

28.     Plaintiff Colson received positive job performance reviews while she worked for Defendant Hennepin County.

29.     Plaintiff Colson is aware of people becoming ill from having received the Covid-19 vaccines.

30.     Plaintiff Colson tested positive for Covid-19 in November 2021 and recovered, thereby providing her with natural immunity to Covid-19 which is superior to vaccinated immunity.

31.     Defendant Hennepin County was vague and unclear as to whether employees such as Plaintiff Borgheiinck could request a religious exemption to the Covid-19 Vaccine Mandate or the testing requirement.  Nonetheless, Plaintiff Borgheiinck requested a religion exemption from Defendant Hennepin County. Defendant Hennepin County granted Plaintiff Borgheiinck's request for a religious accommodation from testing by giving Plaintiff a 12 week unpaid leave of absence. Then Defendant revoked the accommodation on December 23, 2021, because of an alleged undue hardship.

32.     Defendant did not engage in an interactive process with Plaintiff Borgheiinck.

33.     Plaintiff Borgheiinck also sought an exemption from the mandatory weekly testing, and Defendant Hennepin County denied that request and required Plaintiff Borgheiinck to test weekly.

34.     Plaintiff Borgheiinck tested positive for Covid-19 in March of 2021 and recovered, thereby providing her with natural immunity to Covid-19 which is superior to vaccinated immunity.

35.     Plaintiff Borgheiinck believes each person has the God-given right to choose what he or she will inject into their body, or extract from their body, based on free will. Plaintiff Borgheiinck believes that mandatory vaccines, and involuntary weekly testing violate her religious beliefs, because it involves an involuntary intrusion into her body, or an involuntary extraction from her body.

36.     Rather than engage in an interactive process or consider Plaintiff's sincerely held religious beliefs, Defendants had a policy simply "offering a 12 week leave of absence," which turned into termination.

37.     Between April 2020 and the fall 2021, Plaintiff Borgheiinck had worked almost entirely remotely.  During that time she worked from her former office only two times, and had approximately five instances where she made field visits to properties, and during those five times mostly stayed in her vehicle and was masked.  Plaintiff Borgheiinck also self-tested for symptoms each day, thus complying with Defendant's workplace protections.

38.     Plaintiff Borgheiinck proposed an accommodation plan to Defendants, consisting of continuing to work from home, as she had almost exclusively for the past one and one-half years, and to conduct any on-site visits following the "Hennepin County Covid-19 Safety Plan."  Plaintiff also proposed that she transfer back to her prior department, the operations team, which was fully remote, and had job openings.

7

Defendants did not respond to Plaintiff's request for this remote working accommodation.

39.     Plaintiff Borgheiinck received positive job performance reviews while she worked for Defendant, including that she: "completed all assigned quintile and also kept the team on task …";  "She is able to identify and articulate problems or inefficiencies in our process;" and "Carrie has been a great addition to the commercial team over the past year."

40.     Plaintiff Borgheiinck is aware of people becoming ill from having received the Covid-19 vaccines.  She is aware of an eighteen year old who suffered a heart attack shortly after receiving the Covid-19 vaccine.  She is familiar with a person who received the vaccine and died two days later.  Plaintiff Borgheiinck's mother received a Covid-19 booster and within a few weeks her chemotherapy quit working.  Five months after receiving the shots, Plaintiff's mother died, while she had previously been given 1 to 1.5 years to live. She is also familiar with a female co-worker of similar age to Plaintiff who began suffering from Bell's Palsy shortly after receiving the Covid-19 vaccine.

41.     Plaintiff Bratz requested a religious exemption from Defendant's Covid-19 vaccine mandate and required testing.  Defendant MNDHS granted Plaintiff's religious exemption, but conditioned it upon regular mandatory periodic, bi-weekly testing.

42.     Plaintiff Bratz was told there was no exemption or accommodation to the bi-weekly testing.

43.     Plaintiff Bratz is a Christian and ordained non-denominational Christian Minister who believes that she must treat her body as Temple of the Holy Spirit, and each

person has the God-given right to choose what he or she will put into their body, based on free will. She also believes in the sanctity of human life, and since the available vaccines were produced with, or tested with cells from aborted babies, to take the vaccine would be inconsistent with her beliefs.  Plaintiff Bratz also believes that involuntary bi-weekly testing also violates her religious beliefs, because it involves an involuntary intrusion into her body or extraction from it, a Temple of God.

44.     Rather than engage in an interactive process or consider Plaintiff's sincerely held religious beliefs, Defendants summarily refuse to consider any religious exemption to testing.

45.     Defendant MNDHS treats its employees differently based on vaccination status, and requires unvaccinated employees to use their paid sick time to quarantine when exposed to Covid-19 positive patients. Vaccinated employees are not required to use paid sick time. Further, unvaccinated employees are required to use the N-95 mask, which is more difficult to breathe with, especially for someone such as Plaintiff Bratz who has asthma.

46.     Plaintiff Bratz received positive job performance reviews while she worked for Defendant MNDHS, including that she performs "above standards," and has consistently demonstrated her effort to take on additional daily tasks and work in coordination with the needs among her teammates."

47.     Plaintiff Bratz is aware of people becoming ill shortly after having received the Covid-19 vaccines, including co-workers who contracted Covid-19 or suffered from symptoms similar to Covid-19.

9

48.     Plaintiff Colson filed charges of discrimination with the EEOC, and the EEOC issued Plaintiff Colson a Right to Sue letter dated May 20, 2022.

49.     Defendant Hennepin County terminated Plaintiff Borgheiinck on January 25, 2022, for refusal to become vaccinated or do the regular mandatory testing.

50.     Plaintiff Borgeiinck filed charges of discrimination with the EEOC, and the EEOC issued Plaintiff Borgheiinck a Right to Sue letter dated May 20, 2022.

51.     Plaintiff Bratz filed charges of discrimination against Minnesota Department of Human Services with the EEOC, and the EEOC issued Plaintiff Bratz a Right to Sue letter dated May 20, 2022.

52.     Defendant, in issuing the Vaccine Mandate, instructed that all of their employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated" has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

53.     Defendant issued the Vaccine Mandate mandating its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  Dr. Deborah Birx, the former White House Covid Response Coordinator, stated in July 2022: "*I knew these vaccines were not going to protect against infection.  And I think we overplayed the vaccines* …".  Separately Dr. Birx also stated: "*When we make broad statements, when we say to people that these vaccines are going to protect against infection – one, it wasn't studied*, …".  Dr. Birx

made her statements in July 2022, approximately one year after President Biden stated:
"*If you get vaccinated, you won't get Covid.*"

54.     While many claimed that the Covid-19 pandemic was a pandemic of the
unvaccinated, now the majority of people with Covid-19 were vaccinated to one extent or
another.

55.     A very recent study indicates that people who took the Covid-19 vaccine
are actually more likely to be hospitalized than people with natural immunity.

56.     The numbers of patients hospitalized *because* of Covid-19 positive status
has also been overstated because many were hospitalized for other causes, not because of
Covid-19.

57.     Similarly, the numbers of people who were counted as having died from
Covid-19 were overstated because many of them died *with* Covid-19, not *from* Covid-19.

58.     The numbers of Covid-19 deaths were also overstated by upwards of 25%,
or even more.

59.     Dr. Deborah Birx stated "[*b*]*ut let's be very clear: 50% of the people who
died from the Omicron surge were older, vaccinated.*"

60.     Thus, the extent of Covid-19 infections, the severity of the Covid-19
infection, the efficacy of the vaccines, and the time-length of vaccine protection may all
have been overstated, contributing to an over exuberance in mandating vaccines, and
punishing the unvaccinated, as Defendants have done as set forth above.

## FIRST CAUSE OF ACTION

**Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964**

61.     Plaintiffs restate and reallege the allegations set forth in the previous paragraphs as if fully set-forth herein.

62.     Defendants are "employers" within the meaning of 42 U.S.C. § 2000e(b).

63.     Plaintiffs are "employees" within the meaning of 42 U.S.C. § 2000e(f).

64.     Plaintiffs have sincerely held religious beliefs which prevented them from receiving the Covid-19 vaccine or undergoing testing.  Plaintiffs' beliefs arise because of their sincerely held religious beliefs.

65.     Plaintiffs informed their employers of the conflict between Plaintiffs' religious beliefs and taking the Covid-19 vaccine, or undergoing the testing.

66.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. Id. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. Id. § 2000e(j).

67.     The Act prohibits Defendants from scrutinizing what the Defendants believe to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs are logical or as consistent as Defendants believe the exercise of those religious beliefs should be.

68.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of

undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

69.    As set forth above, Defendants could have accommodated Plaintiffs' request for a religious exemption without suffering any undue hardship by having Plaintiffs continue to do their jobs the same as they had done for the last one and one-half years of their employment, without the vaccine or testing requirement.

70.    Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

71.    Because of Defendants' unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*

72.    Plaintiffs restate and reallege the allegations contained in the previous paragraphs as if more fully set forth herein.

73.    Defendants are "employers" within the meaning of 42 U.S.C. § 12111(5)(A).

74.    Plaintiffs were "employees" of Defendant employers within the meaning of 42 U.S.C. § 12111(4).

75.     The ADA, at 42 U.S.C. §12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

76.     Defendants' Vaccine Mandates and testing requirements violated 42 U.S.C. §12112 (d)(4)(a).

77.     As a result of Defendants' actions in violation of the ADA, Plaintiffs suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

### THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983—Deprivation of Rights Under Color of State Law

78.     Plaintiffs restate and reallege the allegations contained in the previous paragraphs as if fully restated herein.

79.     Defendants Hennepin County and MNDHS are both governmental entities, operating pursuant to the laws of the State of Minnesota and pursuant to the requirements of the United States and Minnesota Constitutions.

80.     Defendants' conduct in failing to accommodate Plaintiffs' request for religious accommodation deprived Plaintiffs of rights under the above Title VII and the Civil Rights Act of 1964, the Americans with Disabilities Act, and the United States Constitution.

81.     Defendants' wrongful actions, taken under color of ordinance, regulation, custom and usage of the laws of Minnesota constitutes a deprivation of rights, privilege and immunities as contemplated by 42 U.S.C. § 1983.

82.     Because of Defendants' illegal conduct, Plaintiffs have suffered economic and other damages in an amount to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.00.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and against Defendants for an Order of the Court as follows:

1.      Adjudging that Defendants are liable to Plaintiffs for their actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.      Enjoining Defendants from taking further illegal action against Plaintiffs in violation of both state and federal law, and Ordering Defendants to take action to restore Plaintiffs to their positions they would have enjoyed absent Defendants' illegal conduct;

3.      Awarding Plaintiffs their costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.     Awarding such other relief as the Court may deem just and equitable.

Dated: August 18, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiff*