UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jacqueline Colson, Carrie Borgheiinck, and Shelly Bratz, | Case No. 22-cv-2041 (WMW/LIB) |
| Plaintiffs, | **ORDER** |
| v. | |
| Hennepin County, and Minnesota Department of Human Services, | |
| Defendants. | |

Before the Court is Defendant Hennepin County's motion to dismiss. (Dkt. 32.) For the reasons addressed below, the motion is granted.

## BACKGROUND

During the COVID-19 pandemic, Plaintiffs Jacqueline Colson and Carrie Borgheiinck were employed by Defendant Hennepin County, and Plaintiff Shelly Bratz was employed by Defendant Minnesota Department of Human Services ("MNDHS").

In 2021, Hennepin County and MNDHS instituted their Vaccine Mandates, which required all employees to either obtain the COVID-19 vaccination and provided a process for employees to request a medical or religious exemption that exempted qualified employees from the otherwise mandatory policy. If an exemption was granted, the employee was required to participate in weekly COVID-19 testing. If an exempt employee failed to comply with this requirement, the Vaccine Mandates provided that the employee could be subject to discipline, up to and including termination. In response to the Vaccine

Mandates, Plaintiffs requested and were granted religious exemptions from Defendants' mandatory policies.

Both Colson and Borgheiinck sought accommodation from the weekly COVID-19 testing requirement from Hennepin County. Hennepin County denied Colson's request and granted Borgheiinck's request. Hennepin County then placed Borgheiinck on a 12-week unpaid leave of absence. Hennepin County later revoked Borgheiinck's unpaid leave of absence because of an alleged undue hardship. Borgheiinck continued to refuse to participate in weekly COVID-19 testing, which eventually led to the termination of her employment with Hennepin County. Bratz sought an accommodation from the weekly COVID-19 testing requirement from MNDHS, which MNDHS denied.

## ANALYSIS

To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, establish a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, the district court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff may not rely on, nor may a district court consider, legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678-79.

Because MNDHS has not joined the motion to dismiss, this Order addresses only Colson's and Borgheiinck's claims against Hennepin County.

2

**II.   Title VII**

Hennepin County moves to dismiss Colson's and Borgheiinck's Title VII claims, arguing that neither Colson nor Borgheiinck has established a *prima facie* case of religious discrimination for failure to accommodate under Title VII. Colson and Borgheiinck dispute Hennepin County's argument and contend that they have established a *prima facie* case.

Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [that individual's] . . . terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). This prohibition includes "all aspects of religious observance and practice," unless an employer demonstrates the inability to reasonably accommodate the employee's religious observance or practice without creating an undue hardship on the employer's business. 42 U.S.C. § 2000e(j). It is unlawful for an employer to fail to make reasonable accommodations for an employee's religious practices, unless doing so would impose an undue hardship. *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 63 (1986).

To establish a *prima facie* case of religious discrimination for failure to accommodate under Title VII, plaintiffs must show that they (1) have a bona fide religious belief that conflicts with an employment requirement, (2) informed their employer of this belief, and (3) were disciplined for failing to comply with the conflicting requirement. *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003); *Wilson v. U.S. W. Commc'ns*, 58 F.3d 1337, 1340 (8th Cir. 1995). If plaintiffs establish a *prima facie* case, the burden shifts to defendants to show that they offered plaintiffs a reasonable accommodation,

3

*Wilson*, 58 F.3d at 1340, or that accommodating plaintiffs would result in an undue hardship. *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam); *see also Harrell v. Donahue*, 638 F.3d 975, 977 (8th Cir. 2011).

Colson does not allege that she was disciplined for failing to comply with the weekly testing requirement. Colson, therefore, fails to establish a *prima facie* case against Hennepin County for failure to accommodate under Title VII. Accordingly, dismissal of Colson's Title VII claim is warranted.

Borgheiinck's Title VII claim against Hennepin County fails because Borgheiinck does not allege a bona fide religious belief that conflicts with an employment requirement. To determine whether a belief is religious, the Court considers whether the belief addresses "fundamental and ultimate questions having to do with deep and imponderable matters," whether the teachings are "comprehensive in nature" or isolated, and whether there are "certain formal and external signs" present. *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000). These factors are applied flexibly and with careful consideration to each belief. *Id.* While it may be a "difficult and delicate task," courts must determine what is a "religious" belief. *Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981). A religious belief need not be "acceptable, logical, consistent, or comprehensible to others." *Id.* And the court cannot question the "validity" of what a plaintiff believes. *United States v. Seeger*, 380 U.S. 163, 184 (1965). However, "the very concept of ordered liberty precludes allowing every person to make his [or her] own standards on matters of conduct which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972).

The complaint provides that Borgheiinck "believes each person has the God-given right to choose what he or she will inject into their body, or extract from their body, based on free will." (Dkt. 1 at 7.) Courts across the country have declined to find similar claims in opposition to vaccines and weekly testing requirements to be a sincerely held religious belief. *See, e.g.*, *Kiel v. Mayo Clinic Health Sys. Se. Minnesota*, No. 22-cv-1319 (JRT/ECW), 2023 WL 5000255, at *8 (D. Minn. Aug. 4, 2023); *Petermann v. Aspirus, Inc.*, No. 22-cv-332, 2023 WL 2662899, at *2 (W.D. Wis. Mar. 28, 2023). The complaint primarily details Borgheiinck's scientific, personal, and medical objections to the vaccine, including her belief that the vaccine is ineffective and her concerns with its potential side effects. Borgheiinck's objection to Hennepin County's Vaccine Mandate and the weekly testing appear to be rooted in her belief that the vaccine is unhealthy or unsafe, which is not itself a religious belief. *See Kiel*, 2023 WL 5000255, at *8 (finding that plaintiff's objection to COVID-19 vaccine were rooted in her belief that the vaccine is unhealthy or unsafe rather than a religious belief). Even when the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in Borgheiinck's favor, the Court cannot conclude that Borgheiinck's objections to the vaccine and weekly testing arise from a bona fide religious belief. *See Id.*; *see also Winans v. Cox Auto., Inc.*, No. 22-cv-3826, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023). Borgheiinck, therefore, fails to establish a *prima facie* case for failure to accommodate under Title VII against Hennepin County. Accordingly, Borgheiinck's Title VII claim is dismissed.

## II. ADA

The ADA claims that Colson and Borgheiinck present are based on the ADA's prohibition of medical examinations and disability inquiries. Colson and Borgheiinck argue that Hennepin County's Vaccine Mandate and weekly testing requirement violated the ADA's medical examinations and inquiries provisions, 42 U.S.C. § 12112(d)(4)(A). Hennepin County moves to dismiss the ADA claims, contending that the mandate and weekly testing requirement do not violate the ADA. Colson and Borgheiinck oppose the motion.

The ADA prohibits an employer from requiring a medical examination or inquiring about an employee's disability status "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). "This provision applies to all employees, regardless of whether the employee has an actual disability." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

A "medical examination" is defined by the EEOC as "a procedure or test that seeks information about an individual's physical or mental impairments or health." *Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 574 (6th Cir. 2014) (quoting EEOC Enforcement Guidance). A disability-related inquiry is a question or a series of questions that is likely to elicit information about a disability, such as asking an employee whether he or she has a disability, asking for medical documentation about a disability, or asking broad questions about the employee's impairments that are likely to elicit information about a disability. *Kehren v. Olmsted Med. Ctr.*, No. 22-cv-1560 ADM/JFD, 2023 WL 2776094, at *6 (D. Minn. Apr. 4, 2023) (citing EEOC, Enforcement Guidance on Disability-Related Inquiries

6

and Medical Examinations of Employees Under the ADA (July 27, 2000), https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees#4.)

The requirement that employees report vaccination status to Hennepin County and the weekly COVID-19 testing requirement do not violate the ADA because neither requirement would elicit information about a disability. *Id.; see also Aronson v. Olmsted Med. Ctr.*, No. 22-cv-1594 ADM/JFD, --- F.Supp.3d ----, 2023 WL 2776095 at *5-6 (D. Minn. Apr. 4, 2023) (holding a COVID-19 testing requirement is not likely to reveal a disability).

In summary, Colson and Borgheiinck fail to plausibly allege an unlawful medical examination or disability-related inquiry that violates the ADA. Accordingly, Colson's and Borgheiinck's ADA claims are dismissed.

**III.    Section 1983**

Hennepin County argues that Colson and Borgheiinck fail to state a claim for relief under 42 U.S.C. § 1983. Colson and Borgheiinck dispute this contention.

Section 1983 provides a federal cause of action for plaintiffs to sue officials acting under color of state law for alleged deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 does not establish any substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Rather, Section 1983 serves as a vehicle for "vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). A constitutional or

7

statutory violation is a needed to establish liability under Section 1983. *Id.* However, not all statutory violations may be remedied through Section 1983. *Id.*

A Section 1983 claim is foreclosed when Congress intends a statute to be the exclusive vehicle for relief. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc). Section 1983 does not provide any additional remedy under Title VII nor the ADA. *Id.* (The ADA's comprehensive remedial scheme bars a plaintiff's Section 1983 claims.); *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012) ("Title VII provides the exclusive remedy for employment discrimination claims created by its own terms[.]").

Colson and Borgheiinck allege in their complaint that their Section 1983 claims arise from Hennepin County's violation of Title VII, the ADA, and the United States Constitution. To the extent that Colson and Borgheiinck rely on their Title VII and ADA claims to establish a Section 1983 claim against Hennepin County, their Section 1983 claims fail because Section 1983 does not provide additional remedies for violations of these statutes. *See Collingham v. City of Northfield,* No. 21-cv-2466 (PJS/JFD), 2022 WL 1558410, *1 (D. Minn. May 17, 2022) (dismissing Section 1983 claims arising from Title VII and the ADA because Section 1983 did not provide an independent action against plaintiffs). To the extent Colson and Borgheiinck rely on a violation of the United States Constitution to establish their Section 1983 claims, the complaint fails to articulate a violation of the United States Constitution. Because Colson and Borgheiinck fail to state a claim for relief under 42 U.S.C. § 1983, the Court dismisses Colson's and Borgheiinck's Section 1983 claims.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Hennepin County's motion to dismiss, (Dkt. 32), is **GRANTED;**

2. The claims of Plaintiffs Jacqueline Colson and Carrie Borgheiinck against Hennepin County are **DISMISSED with prejudice**.

Dated: December 12, 2023            <u>s/ Wilhelmina M. Wright</u>
                                    Wilhelmina M. Wright
                                    United States District Judge